# EXHIBIT A



**Service of Process Transmittal**
12/27/2019
CT Log Number 536882715

| | |
|---|---|
| **TO:** | SERVICEOF PROCESS<br>CVS Health Companies<br>1 CVS DR MAIL CODE 1160<br>WOONSOCKET, RI 02895-6146 |
| **RE:** | **Process Served in Missouri** |
| **FOR:** | Caremark PhC, L.L.C.  (Domestic State: DE) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | BPP, Pltf. vs. CAREMARK PHC, L.L.C., etc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Notice, Petition(s) |
| **COURT/AGENCY:** | ST. LOUIS COUNTY - CIRCUIT COURT - 21ST JUDICIAL CIRCUIT COURT, MO<br>Case # 19SLCC05616 |
| **NATURE OF ACTION:** | Product Liability Litigation - Drug Litigation - Telephone facsimile machine |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Clayton, MO |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/27/2019 at 08:44 |
| **JURISDICTION SERVED :** | Missouri |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after receiving this summons, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Ronald J. Eisenberg<br>SCHULTZ & ASSOCIATES LLP<br>640 Cepi Drive, Suite A<br>Chesterfield, MO 63005<br>636-537-4645 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 12/27/2019, Expected Purge Date: 01/01/2020<br><br>Image SOP<br><br>Email Notification,  SERVICEOF PROCESS  service_of_process@cvs.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>155 Federal St Ste 700<br>Boston, MA 02110-1727 |
| **For Questions:** | 800-448-5350<br>MajorAccountTeam1@wolterskluwer.com |

Page 1 of  1 / PP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Case: 4:20-cv-00126-JAR   Doc. #: 1-3   Filed: 01/27/20   Page: 3 of 19 PageID #: 50

Serve

## IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| **Judge or Division:** STANLEY JAMES WALLACH | **Case Number:** 19SL-CC05616 |
| **Plaintiff/Petitioner:** BPP  vs. | **Plaintiff's/Petitioner's Attorney/Address** RONALD JAY EISENBERG 640 CEPI DRIVE SUITE A CHESTERFIELD, MO 63005 |
| **Defendant/Respondent:** CAREMARK PHC, L.L.C. DBA: CVS CAREMARK | **Court Address:** ST LOUIS COUNTY COURT BUILDING 105 SOUTH CENTRAL AVENUE CLAYTON, MO 63105 |
| **Nature of Suit:** CC Injunction | |

**SHERIFF FEE PAID**

(Date File Stamp)

### Summons in Civil Case

The State of Missouri to: CAREMARK PHC, L.L.C.
Alias:
DBA: CVS CAREMARK
CT CORPORATION SYSTEM, REG AGT
120 SOUTH CENTRAL AVE.
CLAYTON, MO 63105

**COURT SEAL OF**



**ST. LOUIS COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

18-DEC-2019
Date

_____ Clerk

Further Information:
LG

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.
I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).

☐ other _____
Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____   _____
Printed Name of Sheriff or Server   Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:
Subscribed and sworn to before me on _____ (date).

(Seal)

My commission expires: _____   _____
                         Date                    Notary Public

OSCA (7-99) SM30 (SMCC) *For Court Use Only*: Document ID# 19-SMCC-11567   1   (Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

| Sheriff's Fees, if applicable | | |
|---|---|---|
| Summons | $ | |
| Non Est | $ | |
| Sheriff's Deputy Salary Supplemental Surcharge | $ 10.00 | |
| Mileage | $ | (_____ miles @ $._____ per mile) |
| Total | $ | |

A copy of the summons and a copy of the petition must be served on each Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

## Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

(1) **Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

(2) **Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

OSCA (7-99) SM30 (SMCC) *For Court Use Only*: Document ID# 19-SMCC-11567   3   (Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Ave., 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

OSCA (7-99) SM30 (SMCC) *For Court Use Only:* Document ID# 19-SMCC-11567   4   (Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

19SL-CC05616

Electronically Filed - St Louis County - December 06, 2019 - 03:10 PM

IN THE MISSOURI CIRCUIT COURT
FOR THE TWENTY-FIRST JUDICIAL CIRCUIT
COUNTY OF ST. LOUIS

| | |
|---|---|
| BPP, | ) |
|     Plaintiff, | ) |
| v. | ) |
| CAREMARK PHC, L.L.C. d/b/a CVS Caremark | ) JURY TRIAL DEMANDED |
|     <u>Serve:</u><br>    CT Corporation System<br>    Registered Agent<br>    120 South Central Ave.<br>    Clayton, MO 63105 | ) |
|     Defendant. | ) |

## CLASS ACTION JUNK-FAX PETITION

Plaintiff BPP brings this junk-fax class action, on behalf of itself and all others similarly situated, against Defendant Caremark PhC, L.L.C. d/b/a CVS Caremark under the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227, and the regulations promulgated thereunder ("TCPA").

### PARTIES AND JURISDICTION

1. Plaintiff BPP is a fictitious name registered with the Missouri Secretary of State for a Missouri corporation with its principal place of business in St. Louis County, Missouri.

2. Defendant PhC, L.L.C. d/b/a CVS Caremark is a Delaware limited liability company registered to do business with the Missouri Secretary of State and it has a registered agent in St. Louis County, Missouri.

1

3. "CVS Caremark" is registered with the Missouri Secretary of State as a fictitious name for Caremark PhC, L.L.C.

4. This Court has personal jurisdiction over Defendant, because it sent at least one illegal fax into Missouri, transacts business within this state, contracts within this state, has committed tortious acts within this state, including conversion of fax recipients' paper, ink, and toner, or otherwise has sufficient minimum contacts with this state.

5. Venue is proper under Missouri Revised Statutes § 508.010.2.

## THE FAX

6. On or about September 4, 2019 Defendant used a telephone facsimile machine, computer, or other device to send to Plaintiff's telephone facsimile machine at (314) 991-4682 an unsolicited advertisement, a true and accurate copy of which is attached as **Exhibit 1** (Fax).

7. The Fax advertised, in part, the commercial availability or quality of multiple products, including, in part, the following: a "3-Day Supply" of opioid medication for "Younger 'Patients" and opioid medication "for cancer, sickle cell disease ord palliative care.

8. Furthermore, the Fax advertised the sale of opioid medication for "a longer day supply for ongoing therapy."

9. The Fax constitutes material advertising the quality or commercial availability of any property, goods, or services.

10. The Fax did not contain a clear and conspicuous opt-out notice as required by 47 U.S.C. § 227(b)(2)(D)(i).

11. The Fax's opt-out notice is copied below.

> CONFIDENTIALITY NOTICE: This communication and any attachments may contain confidential and/or privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify the sender immediately by telephone and destroy all copies of this communication and any attachments. The recipient of this fax may make a request to opt out of receiving telemarketing fax transmissions from CVS Caremark. There are numerous ways you may opt out. The recipient may call toll-free 877-265-2711 and/or fax the opt-out request to 401-652-0893, at any time, 24 hours a day/7 days a week. The recipient may also send an opt-out request by email to do_not_sell@cvscaremark.com. An opt-out request is only valid if it (1) identifies the number to which the request relates, and (2) if the person/entity making the request does not, subsequent to the request, provide express invitation or permission to CVS Caremark to send facsimile advertisements to such person/entity at that particular number. CVS Caremark is required by law to honor an opt-out request within 30 days of receipt. Plan member privacy is important to us. Our employees are trained regarding the appropriate way to handle members' private health information.
> ©2019 CVS Caremark. All rights reserved. 7335-49557A 000510

12. The opt-out notice in the previously paragraph is at least the size of the opt-out notice as it appeared on the Fax.

13. The Fax's opt-out notice was in a font size no larger than size 6.

14. The font or type in the opt-out notice is disproportionally small when compared to the rest of Fax.

15. The font or type in the opt-out notice is barely legible, if legible at all, and it is minuscule.

16. On information and belief, Defendant has sent other facsimile transmissions of material advertising the quality or commercial availability of property, goods, or services to Plaintiff and to at least 40 other persons as part of a plan to broadcast fax advertisements, of which the Fax is an example, or, alternatively, the Fax was sent on Defendant' behalf.

17. On information and belief, Defendant approved, authorized and participated in the scheme to broadcast fax advertisements by (a) directing a list to be purchased or assembled, (b) directing and supervising employees or third

3

Electronically Filed - St Louis County - December 06, 2019 - 03:10 PM

parties to send the faxes, (c) creating and approving the fax form to be sent, and (d) determining the number and frequency of the facsimile transmissions.

18. Defendant has a high degree of involvement in, actual notice of, or ratified the unlawful fax broadcasting activity and failed to take steps to prevent such facsimile transmissions.

19. Defendant created, made, or ratified the sending of the Fax and other similar or identical facsimile advertisements to Plaintiff and to other members of the "Class" as defined below.

20. The Fax to Plaintiff and, on information and belief, the similar facsimile advertisements sent by Defendant, lacked a proper clear and conspicuous notice informing the recipient of the ability and means to avoid future unsolicited advertisements.

21. Under the TCPA and 47 C.F.R. § 64.1200(a)(4)(iii), the opt-out notice for unsolicited faxed advertisements must meet the following criteria:

(A) The notice is clear and conspicuous and on the first page of the advertisement;

(B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(4)(v) of this section is unlawful;

(C) The notice sets forth the requirements for an opt-out request under paragraph (a)(4)(v) of this section

(D) The notice includes—

(1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and

4

(2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or e-mail address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and

(E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

22. The Fax and Defendant's similar facsimile advertisements lacked a clear and conspicuous notice stating that the recipient may make a request to the sender of the advertisement not to send future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting 47 C.F.R. § 64.1200(a)(4)(v)'s requirements is unlawful.

23. The transmissions of facsimile advertisements, including the Fax, to Plaintiff violated 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4)(iii).

24. On information and belief, Defendant faxed substantially similar facsimile advertisements to the members of the Class in Missouri and throughout the United States without first obtaining the recipients' prior express invitation or permission.

25. Defendant violated the TCPA by transmitting the Fax to Plaintiff and substantially similar ones to the Class members without obtaining their prior express invitation or permission, without a prior business relationship, and by not displaying the opt-out notice required by 47 C.F.R. § 64.1200(a)(4).

26. Defendant knew or should have known that (a) facsimile advertisements, including the Fax, were advertisements, (b) Plaintiff and the other Class members had not given their express invitation or permission to receive facsimile advertisements, (c) no established business relationship existed with Plaintiff and the other Class members, and (d) Defendant's facsimile advertisements did not display a proper opt-out notice.

27. The transmissions of facsimile advertisements, including the Fax, to Plaintiff and the Class caused concrete and personalized injury, including unwanted use and destruction of their property, e.g., toner or ink and paper, caused undesired wear on hardware, interfered with the recipients' exclusive use of their property, cost them time, occupied their fax machines for the period of time required for the electronic transmission of the data, and interfered with their business or personal communications and privacy interests.

28. Pleading in the alternative to the allegations that Defendant knowingly violated the TCPA, Plaintiff alleges that Defendant did not intend to transmit facsimile advertisements, including the Fax, to any person where such transmission was not authorized by law or by the recipient, and to the extent that any transmissions of facsimile advertisement were sent to any person and such transmission was not authorized by law or by the recipient, such transmission was made based on Defendant' own understanding of the law or on the representations of others on which Defendant reasonably relied.

## CLASS ACTION ALLEGATIONS

29. Plaintiff brings this class action on behalf of the following class of

persons, hereafter, the "Class":

> All persons in the United States who on or after four years prior to the filing of this action, (1) were sent by or on behalf of Defendant a telephone facsimile message of material advertising the commercial availability or quality of any property, goods, or services, (2) with respect to whom Defendant cannot provide evidence of prior express invitation or permission for the sending of such fax or (3) with whom Defendant did not have an established business relationship, and (4) the fax identified in subpart (1) of this definition (a) did not display a clear and conspicuous opt-out notice on the first page stating that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under 47 C.F.R. § 64.1200(a)(4)(v) is unlawful, (b) lacked a telephone number for sending the opt-out request, or (c) lacked a facsimile number for sending the opt-out request.

24.   Excluded from the Class are Defendant, its employees, agents, and members of the judiciary.

30.   This case is appropriate as a class action because:

a.   <u>Numerosity.</u> On information and belief, based in part on review of the sophisticated Fax and online research, the Class includes at least 40 persons and is so numerous that joinder of all members is impracticable.

b.   <u>Commonality.</u> Questions of fact or law common to the Class predominate over questions affecting only individual Class members, e.g.:

   i.   Whether Defendant engaged in a pattern of sending unsolicited fax advertisements;
   ii.  Whether the Fax, and other faxes transmitted by or on behalf of Defendant, contains material advertising the commercial availability of any property, goods or services;
   iii. Whether the Fax, and other faxes transmitted by or on behalf of Defendant, contains material advertising the quality of any property, goods or services;

Electronically Filed - St Louis County - December 06, 2019 - 03:10 PM

  iv. The manner and method Defendant used to compile or obtain the list of fax numbers to which Defendant sent the Fax and other unsolicited faxed advertisements;

  v. Whether Defendant faxed advertisements without first obtaining the recipients' prior express invitation or permission;

  vi. Whether Defendant violated 47 U.S.C. § 227;

  vii. Whether Defendant willfully or knowingly violated 47 U.S.C. § 227;

  viii. Whether Defendant violated 47 C.F.R. § 64.1200;

  ix. Whether the Fax, and the other fax advertisements sent by or on behalf of Defendant, displayed the proper opt-out notice required by 47 C.F.R. § 64.1200(a)(4);

  x. Whether the Court should award statutory damages per TCPA violation per fax;

  xi. Whether the Court should award treble damages per TCPA violation per fax; and

  xii. Whether the Court should enjoin Defendant from sending TCPA-violating facsimile advertisements in the future.

c. <u>Typicality.</u> Plaintiff's claim is typical of the other Class members' claims, because, on information and belief, the Fax was substantially the same as the faxes sent by or on behalf of Defendant to the Class, and Plaintiff is making the same claim and seeking the same relief for itself and all Class members based on the same statute and regulation.

d. <u>Adequacy.</u> Plaintiff will fairly and adequately protect the interests of the other Class members. Plaintiff's counsel is experienced in TCPA class actions, having litigated more than 100 such cases, and having been appointed class counsel in multiple cases. Neither Plaintiff nor its counsel has interests adverse or in conflict with the Class members.

e. <u>Superiority.</u> A class action is the superior method for adjudicating this controversy fairly and efficiently. The interest of each individual Class

member in controlling the prosecution of separate claims is small and individual actions are not economically feasible.

31. The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1).

32. The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

33. The TCPA provides:

Private right of action. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

> (A) An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) Both such actions.

47 U.S.C. § 227(b)(3)(A)-(C).

34. The TCPA also provides that the Court, in its discretion, may treble the statutory damages if a defendant "willfully or knowingly" violated Section 227(b) or the regulations prescribed thereunder.

9

35. Defendant's actions caused concrete and particularized harm to Plaintiff and the Class, as

    a. receiving Defendant's unsolicited faxed advertisements caused the recipients to lose paper and toner consumed in printing Defendant' faxes;

    b. Defendant's actions interfered with the recipients' use of the recipients' fax machines and telephone lines;

    c. Defendant's faxes cost the recipients time, which was wasted time receiving, reviewing, and routing the unlawful faxes, and such time otherwise would have been spent on business activities; and

    d. Defendant's faxes unlawfully interrupted the recipients' privacy and business interests in being left alone and intruded upon their seclusion and business.

36. Defendant intended to cause damage to Plaintiff and the Class, to violate their privacy, to interfere with the recipients' fax machines, or to consume the recipients' valuable time with Defendant's advertisements; therefore, treble damages are warranted under 47 U.S.C. § 227(b)(3).

37. Defendant knew or should have known that (a) Plaintiff and the other Class members had not given express invitation or permission for Defendant or anyone else to fax advertisements about Defendant's property, goods, or services, (b) Defendant did not have an established business relationship with Plaintiff and the other Class members, (c) the Fax and the other facsimile advertisements were advertisements, and (d) the Fax and the

Electronically Filed - St Louis County - December 06, 2019 - 03:10 PM

other facsimile advertisements did not clearly and conspicuously display the proper or readable opt-out notice.

38. Defendant violated the TCPA by transmitting the Fax to Plaintiff and substantially similar facsimile advertisements to the other Class members without obtaining their prior express invitation or permission and by not displaying the proper opt-out notice required by 47 C.F.R. § 64.1200(a)(4)(iii).

WHEREFORE, Plaintiff BPP, for itself and all others similarly situated, demands judgment against Defendant as follows:

a. certify this action as a class action and appoint Plaintiff as Class representative;
b. appoint the undersigned counsel as Class counsel;
c. award minimum damages of $500 per TCPA violation per facsimile pursuant to 47 U.S.C. § 227(a)(3)(B);
d. award treble damages up to $1,500 per TCPA violation per facsimile pursuant to 47 U.S.C. § 227(a)(3);
e. enjoin Defendant and its contractors, agents, and employees from continuing to send TCPA-violating facsimiles pursuant to 47 U.S.C. § 227(a)(3)(A);
f. award class counsel reasonable attorneys' fees and all expenses of this action and require Defendant to pay the costs and expenses of class notice and claim administration;
g. award Plaintiff an incentive award based upon its time expended on behalf of the Class and other relevant factors;
h. award Plaintiff prejudgment interest and costs; and
i. grant Plaintiff all other relief deemed just and proper.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases, or other itemization of telephone or fax numbers associated with the Defendant and the communication or transmittal of advertisements as alleged herein.

December 6, 2019

                                      SCHULTZ & ASSOCIATES LLP

                                      By: *Ronald J Eisenberg*
                                           Ronald J. Eisenberg, #48674
                                           Robert Schultz, #35329
                                           640 Cepi Drive, Suite A
                                           Chesterfield, MO 63005
                                           636-537-4645
                                           Fax: 636-537-2599
                                           reisenberg@sl-lawyers.com
                                           rschultz@sl-lawyers.com

                                      *Attorneys for Plaintiff*

                             Law Offices of Philip M. Horwitz, L.L.C.

                             By: /s/ Philip M. Horwitz
                                   Philip M. Horwitz, #38493
                                   640 Cepi Drive, Suite A
                                   Chesterfield, MO 63005-1221
                                   636-526-9644
                                   PH@PhilipHorwitzLaw.com

                                      *Attorney for Plaintiff*

Electronically Filed - St Louis County - December 06, 2019 - 03:10 PM

♥ CVS caremark



Dear Dr. WILLIAM COHEN,

# Now a 3-Day Supply Limit on Opioids in Younger Patients

As part of our ongoing efforts to help address opioid medication abuse, CVS Caremark® is offering more ways to help protect your pediatric and adolescent patients.

Starting **October 1, 2019**, our clients have the option to apply a 3-day supply limit on opioids prescribed for patients who are:

- 19 or younger; and
- Considered opioid naïve—those who haven't had an opioid for 7 cumulative days within the past 90 days; and
- Being prescribed short-acting opioids, including immediate release (IR) and immediate release combination opioid products.

Opioid prescriptions for cancer, sickle cell disease or palliative care will be exempt from the 3-day supply limit. In addition, you can request prior authorization for patients whose clinical diagnosis may require a longer day supply for ongoing therapy.

Thank you for working together with us as we help fight against opioid abuse.

Sincerely,
CVS Caremark

CONFIDENTIALITY NOTICE: This communication and any attachments may contain confidential and/or privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify the sender immediately by telephone and destroy all copies of this communication and any attachments. The recipient of this fax may make a request to opt out of receiving telemarketing fax transmissions from CVS Caremark. There are numerous ways you may opt out: The recipient may call toll-free 877-265-2711 and/or fax the opt-out request to 401-652-0893, at any time, 24 hours a day/7 days a week. The recipient may also send an opt-out request by email to do_not_call@cvscaremark.com. An opt out request is only valid if it (1) identifies the number to which the request relates, and (2) if the person/entity making the request does not, subsequent to the request, provide express invitation or permission to CVS Caremark to send facsimile advertisements to such person/entity at that particular number. CVS Caremark is required by law to honor an opt-out request within 30 days of receipt. Plan member privacy is important to us. Our employees are trained regarding the appropriate way to handle members' private health information.
©2019 CVS Caremark. All rights reserved. 7335-49597A 080619

Ex. 1