UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BPP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:20-cv-126-MTS |
| ) | |
| CAREMARKPCS HEALTH, L.L.C. ) | |
| d/b/a CVS CAREMARK, ) | |
| and WELLTOK, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Before the Court is Defendants' Motion for Summary Judgment, Doc. [54], pursuant to Federal Rule of Civil Procedure 56, regarding a claim under the Telephone Consumer Protection Act ("TCPA"), also known as the "Junk Fax Act," 47 U.S.C. § 227. For the reasons set forth below, the Court grants Defendants' Motion.

**I.   BACKGROUND**

Plaintiff BPP,[1] a health care provider, alleges that Defendants CaremarkPCS Health, L.L.C. ("Caremark") employed Welltok, Inc. ("Welltok") (collectively, "Defendants") to send an unsolicited advertisement to them in violation of the TCPA. Plaintiff alleges that the "unsolicited advertisement" was a fax (the "Fax") sent to over 55,000 doctors and health care providers in the United States, such as Plaintiff, notifying them of new supply limits[2] on coverage for opioid prescriptions for certain pediatric and adolescent patients covered by plans sponsored by Caremark clients. *See* Doc. [66-2]. In the instant Motion, Doc. [54], Defendants moved for summary

---

[1] BPP is the fictitious name of an entity called William M. Cohen, D.M.D., M.S., Greater St. Louis Periodontics.

[2] The fax noted that Caremark offered a new "3-Day Supply Limit on Opioids in Younger Patients" that was being implemented by sponsors of prescription benefit plans, Caremark's clients.

1

judgment pursuant to Fed. R. Civ. P. 56 arguing that Plaintiff's TCPA claim fails as a matter of law because the Fax does not constitute an "advertisement" within the definition of 47 U.S.C. § 227(a)(5) and was instead an "informational" message not prohibited by the statute.

## II.   LEGAL STANDARD

"A court must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). "The movant bears the initial responsibility of informing the district court of the basis for its motion and must identify the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact." *Id.* at 996; *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Only after the moving party fulfills its duty is the nonmoving party obliged to proffer evidence that contradicts the moving party's showing and that proves the existence of a genuine issue of material fact." *Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir. 1997) (internal quotations omitted); *accord Leffall v. City of Elsberry, Mo.*, No. 4:15-cv-398 SPM, 2016 WL 2866422, at *2 (E.D. Mo. May 17, 2016) ("If the moving party meets this initial burden, the nonmoving party must then set forth affirmative evidence from which a jury might return a verdict in his or her favor."). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007).

## III.   DISCUSSION

The TCPA prohibits the use of fax machines to send "unsolicited advertisements." *See* 47

U.S.C. § 227. The term "unsolicited advertisement" means "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id.* at § 227(a)(5). "Informational messages," however, are exempt from the TCPA. *See Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 222 (6th Cir. 2015); *see also* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967, 25972–73 (May 3, 2006) (explaining that statements that do not promote the commercial availability or quality of a good or service are not "unsolicited advertisements," but rather, "informational messages"). Whether a fax constitutes an "advertisement" under 47 U.S.C. § 227 is a question that the courts may decide as a matter of law. *See Ameriguard, Inc. v. Univ. of Kansas Med. Ctr. Rsch. Inst., Inc.*, No. 06-0369–cv–W–ODS, 2006 WL 1766812, at *1 (W.D. Mo. June 23, 2006), *aff'd*, 222 F. App'x 530 (8th Cir. 2007); *Sandusky*, 788 F.3d at 226 (granting summary judgment because "no reasonable jury could conclude from this record that the faxes were commercial in nature, [so] they are not 'advertisements' under the Act").

The sole issue presented in this Motion is whether a reasonable jury could find Defendants' unsolicited Fax constitutes an "advertisement" as defined by the TCPA. The Court answers this question in the negative and concludes that the Fax is not an "advertisement" because it is not "commercial in nature," but, instead informational. *See Levine Hat Co. v. Innate Intel., LLC*, No. 4:16-cv-01132-SNLJ, 2021 WL 1889869, at *4 (E.D. Mo. May 11, 2021) (quoting *Sandusky*, 788 F.3d at 224).

First and foremost, the Fax does not advertise either the commercial availability or the quality of Caremark's service; rather, the Fax simply informs Plaintiff of Caremark's new supply

3

limit and provides up-to-date information to keep doctors (such as Plaintiff) informed about changes to the terms of their patients' prescription coverage. The Sixth Circuit held in *Sandusky* that a fax from a pharmacy benefit manager (like Caremark) to a health care provider (like Plaintiff) was not an "unsolicited advertisement" under the TCPA because the faxes merely informed the recipient-doctor of cost-effective drugs for the doctor's own patients who were covered under the defendant's clients' health insurance plan. *Sandusky*, 788 F.3d at 222. Just like the Fax here, it simply provides prescribing doctors, such as Plaintiff, with information regarding new limitations related to insurance coverage of opioid medications for their patients.

The Court recognizes there is a thin line between a purely informational fax and an "advertisement," however, a review of the Fax alone shows it cannot be reasonably construed as an advertisement. The wording of the Fax is particularly instructive. The Fax states that "our *clients* have the option to apply a 3-day supply limit on opioids prescribed to patients." Doc. [66-2] (emphasis added). Caremark's "clients" are not patients or doctors, such as Plaintiff, but rather, entities that sponsor group health plans who contract with Caremark to administer plan members' prescription benefits, like filling prescriptions and processing claims. Doc. [56] ¶¶ 6–7. It is undisputed that during the time Defendants sent the Fax, Plaintiff prescribed opioid medications for at least four patients who were members of health plans sponsored by Caremark's clients. Doc. [56] ¶ 14. In other words, the record shows that the Fax informed Plaintiff of changes to Plaintiff's own patients' insurance coverage for opioid prescriptions written by Plaintiff — a health care provider. Further, the Fax states that "you"— meaning a doctor, like Plaintiff — can avoid the supply limits if opioids are prescribed for patients in particular situations ("cancer, sickle cell disease or palliative care") or by requesting prior authorization for patients whose "clinical diagnosis may require a longer day supply for ongoing therapy." Doc. [66-2]. Thus, the Fax does

4

not advertise anything for sale, but rather, informs Plaintiff of Caremark's new supply limit and how this may affect Plaintiff in its professional practice. *St. Louis Heart Ctr., Inc. v. Caremark, L.L.C.*, No. 4:12-cv-2151-TCM, 2013 WL 9988795, at *3 (E.D. Mo. Apr. 19, 2013) (finding an "advertisement," in part, because no information in the fax that would "seemingly affect Plaintiff's professional behavior"). And although the Fax calls Caremark's services to Plaintiff's attention, one cannot inform without somewhat promoting, but here, it is clear the Fax's "primary purpose" is to inform. *See Sandusky*, 788 F.3d at 222 (noting that where the fax's "primary purpose is informational, rather than to promote commercial products," it is not covered by the TCPA). On its face, no reasonable jury could conclude that the Fax was commercial in nature, thus, the Fax is not an "advertisement" as defined by the TCPA.

Nonetheless, Plaintiff argues, and this Court rejects, that the Court should inquire as to whether Defendants would obtain an indirect or ancillary commercial benefit as a result of sending the Fax. Doc. [66] at 10. As iterated above, the inquiry under the TCPA is whether the content of the message is commercial, not what predictions can be made about future economic benefits. And as explained above, the Fax is not commercial in nature. Moreover, the link between Caremark receiving any commercial benefit from sending this type of information to prescribing doctors is too tenuous[3] for the Court to speculate and the record is devoid of any evidence to the contrary.

In any event, were the Court to undergo such an expedition, as Plaintiff suggests, the Court's decision is only bolstered. Even in the light most favorable to Plaintiff, the Fax does not suggest anything "commercial" because it was not "sent with hopes to make a profit, directly or indirectly, from [Plaintiff] or the others similarly situated." *Sandusky*, 788 F.3d at 222. Most

---

[3] Even if the Court did inquire and agree to speculate, "[t]he fact that the sender might gain an ancillary, remote, and hypothetical economic benefit later on does not convert a noncommercial, informational communication into a commercial solicitation." *Sandusky*, 788 F.3d at 225.

5

telling, Caremark is not in the business of selling any products or services to health care providers, such as Plaintiff, and the record demonstrates that a "supply limit" regarding prescription benefits coverage is not a product, good, or service that *any doctor or patient* may purchase from Caremark. Thus, the Fax has no commercial motive, cannot solicit business for a commercially available service, cannot hope to attract clients or customers by sending the Fax, nor requests that Plaintiff or its patients to take any affirmative action whatsoever. *Sandusky*, 788 F.3d at 222–23 (finding no "advertisement" because the fax sender did not promote a product or service for sale or have a profit motive for sending the fax, despite calling products to the recipient's attention); *St. Louis Heart Ctr., Inc. v. Caremark, L.L.C.*, No. 4:12-cv-2151-TCM, 2013 WL 9988795, at *3 (E.D. Mo. Apr. 19, 2013) (finding an "advertisement" when a Fax encouraged the Plaintiff's patients to participate in the program and thus, promoted a service).

Rather, the record shows Defendants sent the Fax in a purely informational, non-commercial sense: to inform doctors that the terms of some patients' prescription benefits coverage for opioid prescriptions were changing, so doctors could make informed prescribing decisions with that information. *Sandusky*, 788 F.3d at 222 (finding no "advertisement" because the fax lists drugs "in a purely informational, non-pecuniary sense"); *Physicians Healthsource, Inc. v. Express Scripts Servs. Co.*, No. 4:15-cv-664-JAR, 2016 WL 1246884, at *2 (E.D. Mo. Mar. 30, 2016) (finding an "advertisement" for TCPA purposes because it advertised the "commercial availability" of goods and services). Plaintiff's failure to show Defendants promoted the commercial availability or "service" of a "3-Day Supply Limit on Opioids" to Plaintiff, his patients, or to anyone else is fatal to Plaintiff's ability to survive summary judgment.

Accordingly, the Court grants Defendants' Motion because the Fax is not an "advertisement" under 47 U.S.C. § 227(a)(5) as a matter of law.

## CONCLUSION

On the undisputed facts, the Court concludes that the Fax is not an "advertisement" under 47 U.S.C. § 227(a)(5) because no reasonable jury could conclude from the record that the Fax promoted the commercial availability or quality of Caremark's services, direct or indirectly. Therefore, summary judgment is appropriate because there are no genuine disputes of material fact and Defendants are entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, Doc. [54], is **GRANTED**.

Dated this 9th day of November, 2021.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE